UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **TAMAR RENEE DOZIER** | **CASE NO. 6:19-CV-01223** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **GOAUTO INSURANCE CO** | **MAGISTRATE JUDGE HANNA** |

### MEMORANDUM RULING

The present matter before the Court is the Plaintiff's Motion to Remand and Associated Request, in the Alternative, for Jurisdictional Discovery [ECF No. 11]. Magistrate Judge Hanna issued his Report and Recommendation ("R&R") [ECF No. 19] on January 21, 2020, and subsequently issued a Supplemental R&R [ECF No. 26] recommending that the Motion to Remand be granted. Defendant has filed an objection to the Supplemental R&R. The Court then granted Plaintiff's request for limited discovery. Following the completion of this discovery, the parties filed supplemental briefs and evidence.

### I.
### BACKGROUND

The present case is a proposed class action alleging that GoAuto Insurance Co. ("GoAuto") violated Louisiana law by undervaluing the vehicles of insureds who filed "total loss" claims after their vehicles were damaged in accidents. Plaintiff Tamar Dozzier ("Plaintiff") is a Louisiana citizen who purchased a GoAuto automobile insurance policy that provided collision coverage.[1] Following an August 3, 2018, accident that damaged Plaintiff's vehicle,[2] GoAuto adjusted

---

[1] *Id.*
[2] Document 1, Petition.

1

Plaintiff's total loss claim based on a vehicle valuation report (called the CCC One Market Valuation Report) produced by CCC Information Services.[3] On November 23, 2018, GoAuto issued—and Plaintiff accepted—a check in settlement of her property damage claim. Plaintiff then transferred her car title to GoAuto.[4] Plaintiff alleges that the CCC valuation reports used by GoAuto systematically undervalue total loss vehicles and that GoAuto knew (and, indeed, intended) that its use of these reports would result in lower pay-outs to its customers. In Plaintiff's case, GoAuto's use of CCC's valuation reports allegedly resulted in a proposed pay-out of $8,756.[5] In contrast, the National Automobile Dealers Association (NADA) valuation report for Plaintiff's car reflected a value of $10,325 for a "clean retail" car.[6]

On August 12, 2019, Plaintiff filed this lawsuit in Louisiana state court, alleging that the valuation method used by GoAuto does not comport with the terms of her policy or state insurance regulations.[7] Plaintiff asserts claims for (1) breach of contract and bad faith, and (2) violations of Louisiana state law governing the computation of total loss claims. Plaintiff asserts these claims on her own behalf as well as on behalf of a class of:

> [A]ll past and present Goauto Insurance Company policyholders who have made claims against their policy for the total loss of a vehicle and had those claims undervalued through the use of the CCC One Market Valuation Report system and/or unfair valuation tools used by Goauto Insurance Company.[8]

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Those regulations require that a claim for total loss be adjusted using one of three methods, including: (a) "A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources," (b) "The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public," or (c) "A qualified expert appraiser selected and agreed upon by the insured and insurer." La. R.S. § 22:1892(B)(5).
[8] ECF No. 1-1 at ¶ 44.

On September 18, 2019, Defendant filed a notice removing Plaintiff's suit under the Class Action Fairness Act ("CAFA"), 18 U.S.C. § 1332(d). Plaintiff then filed a motion to remand, arguing that GoAuto had not met the minimal diversity and the amount in controversy requirements for CAFA jurisdiction. Alternatively, Plaintiff contends that the "Local Controversy" and "Home State" exceptions to CAFA jurisdiction require remand.

The Magistrate Judge issued two R&R's concluding that GoAuto had not established minimal diversity and recommending that the Motion to Remand be granted.[9] GoAuto submitted several rounds of briefing that included information from its internal records showing that some members of the proposed class were citizens of states other than Louisiana.[10] On September 24, 2020, the Court issued a Memorandum Ruling, concluding that GoAuto had established minimal diversity for purposes of invoking CAFA but that Plaintiff was entitled to jurisdictional discovery on the Home State and Local Controversy exceptions to CAFA jurisdiction.[11] The parties have conducted this jurisdictional discovery and filed supplemental memoranda and evidence addressing these exceptions.

## II.
## LAW AND ANALYSIS

### A. CAFA and Its Exceptions.

Federal courts are courts of limited jurisdiction.[12] Thus, a suit is presumed to be outside a federal court's jurisdiction until the party invoking federal court jurisdiction establishes

---

[9] ECF No. 19, 26.
[10] ECF No. 21, 27.
[11] ECF No. 34.
[12] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

3

otherwise.[13] The burden of establishing federal court jurisdiction rests on the party invoking federal jurisdiction.[14] Accordingly, in the present case, GoAuto bears that burden.

CAFA expands federal courts' traditional diversity jurisdiction under 28 U.S.C. §1332 to cover certain interstate class actions that involve matters of national importance.[15] CAFA grants federal subject matter jurisdiction over interstate class action lawsuits where: (1) the proposed class contains more than 100 members; (2) minimal diversity exists between the parties; (3) the amount in controversy exceeds $5 million; and (4) the primary defendants are not states, state officials, or other governmental entities.[16] Traditional diversity jurisdiction requires complete diversity with respect to the citizenship of the parties.[17] Under CAFA, "minimal diversity" is sufficient for federal jurisdiction over covered class actions.[18] Minimal diversity requires that at least one plaintiff is diverse from one defendant.[19]

CAFA includes three exclusions to federal jurisdiction over covered class actions: the "Local Controversy" exception,[20] the "Home State" exception,[21] and the "discretionary exception."[22] The Local Controversy and Home State exceptions are mandatory, and are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state."[23] The statutory requirements for invoking these exceptions are designed to identify

---

[13] *Id.*
[14] *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 290 (5th Cir. 2013)
[15] *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011).
[16] 28 U.S.C. § 1332(d)(2); *Preston v. Tenet Healthsystem Memorial Medical Center, Inc. ("Preston I")*, 485 F.3d 793, 797 (5th Cir. 2007).
[17] *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).
[18] 28 U.S.C. § 1332(d)(2).
[19] *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 594 n. 12 (2005) (noting that for minimal diversity under CAFA, "one plaintiff's diversity from one defendant suffices" to establish minimal diversity).
[20] 28 U.S.C. § 1332(d)(4)(A).
[21] 28 U.S.C. § 1332(d)(4)(B).
[22] *Preston v. Tenet Healthsytem Memorial Medical Center, Inc. ("Preston II")*, 485 F.3d 804, 810-11 (5th Cir. 2007).
[23] *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d at 570 (quoting *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 682 (7th Cir. 2006)).

those controversies that are truly localized.[24] A party seeking remand on the basis of one of the exceptions bears the burden of proving that the exception applies by a preponderance of the evidence.[25] "CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction."[26] Only after the removing defendant has established a basis for CAFA jurisdiction does the burden shift to the party seeking remand to prove by a preponderance of the evidence that an exception to CAFA jurisdiction applies.[27] A district court "has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction."[28] The sufficiency of the jurisdictional evidence must be evaluated on a case-by-case basis.[29]

Here, Plaintiff relies on the Local Controversy and the Home State exceptions to CAFA jurisdiction.

## B. The Local Controversy Exception.

28 U.S.C. § 1332(d)(4)(C) details the requirements for the Local Controversy exception to CAFA jurisdiction:

> (4) A district court shall decline to exercise jurisdiction under paragraph (2)—
>
> (A)(i) over a class action in which—
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant—

---

[24] *Id.*
[25] *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 409 n. 3 (5th Cir. 2014)
[26] *Joseph v. Unitrin, Inc.*, No. 1:08-CV-077, 2008 WL 3822938, at *4 (E.D. Tex. Aug. 12, 2008) (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 n. 3 (11th Cir. 2006)).
[27] *Preston II*, 485 F.3d at 813 ("Once federal jurisdiction has been established under [CAFA], the objecting party bears the burden of proof as to the applicability of any express statutory exception...." (quoting *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007)).
[28] *Preston II*, 485 F.3d at 817 (quoting *Coury v. Prot*, 85 F.3d at 249).
[29] *Preston I*, 485 F.3d at 801.

5

> **(aa)** from whom significant relief is sought by members of the plaintiff class;
> **(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>
> **(cc)** who is a citizen of the State in which the action was originally filed; and
>
> **(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> **(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons....[30]

The exception thus applies in the present case if (1) Louisiana is the domicile for more than two-thirds of the putative class members; (2) GoAuto is a citizen of Louisiana; (3) GoAuto's conduct forms a significant basis for the claims asserted by the plaintiff class; (4) significant relief is sought from GoAuto; (5) the principal injuries allegedly resulting from GoAuto's conduct occurred in Louisiana; and (6) no other class action "asserting the same or similar factual allegations" against GoAuto was filed in the preceding three years.[31]

**1. Requirements Other Than the "Two-Thirds Citizenship" Requirement.**

There is little dispute over five of the six requirements for the Local Controversy exception in the present case. GoAuto is the only defendant in the case, and it is a corporation organized under the laws of Louisiana with its principal place of business in Baton Rouge, Louisiana.[32] GoAuto is thus a citizen of Louisiana. Plaintiff further alleges that GoAuto paid total loss claims under its Louisiana-issued policies based on valuation methodologies that violate Louisiana law.[33]

---

[30] 28 U.S.C. § 1332(d)(4)(C).
[31] *Id.*
[32] *See* ECF No. 1 at ¶ 12.
[33] ECF No. 1-1 at ¶¶ 23, 34-37. Specifically, Plaintiff seeks to represent a class of "all past and present Goauto Insurance Company policyholders who have made claims against their policy for the total loss of a vehicle and had those claims undervalued through the use of the CCC One Market Valuation Report system and/or unfair valuation tools used by Goauto Insurance Company." *Id.* at ¶ 44.

6

Plaintiff also shows that 94.5% of these claims involved GoAuto insureds with Louisiana mailing addresses and driver's licenses, and that the accidents resulting in these claims occurred in—and were adjusted in—Louisiana.[34] Accordingly, the claims asserted by Plaintiff on behalf of the proposed class are grounded in GoAuto's conduct, and this conduct occurred principally in Louisiana.[35] Plaintiff further alleges that there have been no class actions filed against GoAuto in the preceding three years that assert the same or similar allegations.[36] In sum, five of the six requirements for the Local Controversy exception are satisfied. The remaining requirement—that more than two-thirds of the proposed class were citizens of Louisiana at the time the case was filed—is hotly contested.

   2. **Rules Governing the Determination of Citizenship.**

Citizenship for purposes of the Local Controversy exception mirrors citizenship for purposes of diversity—it is a party's "domicile."[37] Domicile, in turn, requires residency and "the intention to remain."[38] Thus, a "party's residence in a state alone does not establish domicile" absent evidence of that party's intent to remain in the state.[39] To determine a party's domiciliary intent in traditional diversity cases, courts have considered "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."[40] However, unlike the inquiry involved in determining the citizenship of *named* plaintiffs in traditional diversity cases, determining

---

[34] ECF No. 38 at 2; ECF No. 38-3 at 3.
[35] ECF No. 1-1 at ¶ 4 (alleging that Plaintiff "and potential class members were Louisiana resident policyholders of GOAUTO INSURANCE COMPANY ....")
[36] ECF No. 11-2 at 9.
[37] *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir.1996).
[38] *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir.1985).
[39] *Preston I*, 485 F.3d at 798 (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974)).
[40] *Coury*, 85 F.3d at 251.

citizenship for purposes of applying a CAFA exception could confront a court with the "arduous task of examining the domicile of every proposed class member."[41] Accordingly, the Fifth Circuit has observed that proof of class members' citizenship for purposes of applying a CAFA exception should be based on "practicality and reasonableness."[42]

The Fifth Circuit's decisions in *Preston I* and *Preston II* provide some guidance in determining the citizenship of class members in the context of the Local Controversy exception. In *Preston I*, the plaintiffs sued a group of hospitals and medical providers on behalf of a class, asserting claims for "injuries and/or deaths allegedly caused by defects and unreasonably dangerous conditions at the medical facilities of [the Defendants] on August 29, 2005, the date of Hurricane Katrina."[43] The defendants removed the case under CAFA, and the plaintiffs moved to remand the case to state court under the Local Controversy exception.[44] The Fifth Circuit concluded that the plaintiffs had not proven by a preponderance of the evidence that more than two-thirds of the proposed class were citizens of Louisiana at the time the case was filed.[45] The plaintiffs' sole evidence of citizenship in that case were medical records showing that, of the 299 patients who appeared to fall within the class definition, 242 "identified a Louisiana address as

---

[41] *Preston II*, 485 F.3d at 816.
[42] *Id.* In *Preston II*, the court distinguished the citizenship inquiry involved in applying an exception to CAFA jurisdiction from the citizenship inquiry involved in a traditional diversity case:

> We decline to adopt such a heightened burden of proof considering the far greater number of plaintiffs involved in a class action as compared to the traditional diversity case. From a practical standpoint, class action lawsuits may become "totally unworkable in a diversity case if the citizenship of all members of the class, many of them unknown, had to be considered." 1 CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS § 72, at 521 (5th ed.1994). The requisite showing under CAFA prompts this court to reconcile congressional intent, our precedent for determining citizenship, and judicial economy. Thus, the evidentiary standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness.

*Id.*
[43] 485 F.3d at 795-96.
[44] *Id.*
[45] *Id.* at 800-802.

8

their primary billing address and residence."[46] The court concluded that Louisiana billing addresses, standing alone, did not establish the *domicile* (and, hence, citizenship) of the class members because billing addresses alone did not show domiciliary intent.[47] The *Preston I* court further ruled that the plaintiffs were not entitled to the benefit of the "continuing domicile" presumption. Ordinarily, "[t]here is a presumption in a favor of [a person's] continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect...."[48] The court concluded that the plaintiffs in *Preston I* were not entitled to that presumption because they had not come forward with evidence that the class members were domiciled in Louisiana.[49] Accordingly, the presumption was never triggered.

In *Preston II,* the court addressed whether a different set of plaintiffs suing a different set of hospitals had satisfied the requirements for one of the exceptions to CAFA jurisdiction. The district court had remanded the case to state court under the Local Controversy and Home State exceptions, as well as CAFA's "discretionary" remand provision.[50] In *Preston II*, the court focused

---

[46] *Id.* at 798.
[47] *Id.* ("Domicile requires residence in the state and an intent to remain in the state. Therefore, the medical records are not tantum out to sufficient proof of citizenship.")
[48] *Id.* at 801 (*quoting Preston II*, 485 F.3d at 819.)
[49] *Id.*
[50] CAFA's discretionary remand provision provides that:

> (3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--
>
> **(A)** whether the claims asserted involve matters of national or interstate interest;
>
> **(B)** whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> **(C)** whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> **(D)** whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

9

on CAFA's discretionary remand provision, which only requires proof that at least one-third of the class members were citizens of the state.[51] Nevertheless, the court applied the same citizenship analysis as in *Preston I*. In contrast to *Preston I*, the plaintiffs in *Preston II* relied not only on records showing Louisiana billing addresses but also eight affidavits from class members, including six affidavits from the named plaintiffs. In these eight affidavits, the affiants stated that they intended to remain in Louisiana or, if dislocated as a result of Hurricane Katrina, that they intended to return to Louisiana.[52] The court concluded that these affidavits, together with billing addresses, were sufficient to show a Louisiana domicile for at least one-third of the proposed class.[53] Unlike in *Preston I*, the *Preston II* court concluded that the "continuing domicile" presumption applied because the plaintiffs had come forward with evidence of domiciliary intent.[54] The court also held that the presumption applied despite the impact of Hurricane Katrina: "we find no precedential support for the notion that a forced relocation (especially a mandatory evacuation prompted by a natural disaster) destroys the presumption of continued domicile."[55] The court thus concluded that the plaintiffs in *Preston II* had satisfied the discretionary remand provision of CAFA.[56]

---

      (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

      (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C.A. § 1332 (West).
[51] *Id.*
[52] 485 F.3d. at 814.
[53] *Id.*
[54] *Id.* at 818.
[55] *Id.*
[56] *Id.* at 819.

### 3. Mailing Addresses and Driver's License Data.

Here, the discovery produced by GoAuto identifies approximately 6,753 GoAuto insureds who fall within Plaintiff's class definition.[57] Of these 6,753 insureds, GoAuto's records indicate that 6,385—approximately 94.5 percent—had provided Louisiana addresses in connection with "the last renewal of the policy under which the loss claim was made," and had a Louisiana driver's license number "collected by GoAuto at the time of issuance of the policy."[58] Courts have generally held that evidence of in-state driver's license numbers together with in-state mailing addresses are sufficient to show domicile—and, hence, citizenship—because the act of obtaining an in-state driver's license is probative of an intent to remain in the state.[59] Moreover, the fact that these class members purchased Louisiana automobile insurance policies is probative of citizenship because the purchase of a Louisiana policy indicates some intent to remain in the state for a period of time.[60]

While GoAuto acknowledges that an in-state driver's license number is probative of domiciliary intent, it argues that the driver's license data in this case cannot show domiciliary intent as of the original filing date of this case on August 12, 2019. GoAuto represents that it collects its

---

[57] ECF No. 38 at 2; ECF No. 38-3 at 3. Specifically, GoAuto identified these insureds as having received payment for a total loss on their vehicles in Louisiana under their GoAuto insurance policy and the value of their total loss vehicle was calculated using the CCC One Market valuation report from July 1, 2010, to the present. ECF No. 38 at 2.
[58] ECF No. 38 at 2; ECF No. 38-3 at 3.
[59] *See, e.g., Preston II*, 485 F.3d at 816 (identifying "driver's and other licenses" as a factor probative of citizenship); *Evans v. Enterprise Products Partners, LP*, 426 F. Supp. 3d 397, 405 (S.D. Tex. 2019) ("Texas driver's licenses are also probative of an intent to remain in Texas, as a person is unlikely to obtain a driver's license in a state he does not intent to remain in for some time."); *Saunders v. Door Dash, Inc.*, No. 20-cv-05825, 2021 W.L. 528767, at *5 (N.D. Cal. Feb. 12, 2021) (observing that "data regarding drivers' licenses is particularly probative" of domicile); *Collins v. Golden Gate Bell, LLC*, No. 18-cv-06442, 2019 W.L. 2523571, at *3 (N.D. Cal. June 19, 2019) ("holding a driver's license or other identification issued by a state is strong evidence of domicile in that state."); *Fluke v. Cashcall, Inc.*, No. 08-5776, 2009 W.L. 637461, at *3 (E.D. Pa. Mar. 10, 2009) ("address and drivers' license information has been deemed sufficient for determining the citizenship of punitive class members for diversity of citizenship purposes under CAFA....") (*citing Fuller v. Home Depot Services, LLC*, No. 07-1268, 2007 W.L. 2345257 (N.D. Ga. Aug. 14, 2007).
[60] *Rosa v. Charitable Trucking Co.*, No. 21-CV-3153, 2021 WL 3774312, at *6 (S.D.N.Y. Aug. 24, 2021) (considering, *inter alia*, possession of North Carolina insurance cards as evidence that plaintiffs were domiciled in North Carolina).

insureds' driver's license numbers only when a policy is first issued and that it does not confirm the license information provided nor does it update driver's license information when policies are renewed.[61] As a result, according to GoAuto, the driver's license information for approximately 81 percent of the potential class members was first provided in 2017 or earlier—two years or more prior to the filing date of the present case—and some of its driver's license information dates back to 2009.[62] GoAuto, therefore, argues that the driver's license data in its files cannot show the citizenship of class members as of August 2019. Plaintiff could overcome this argument by relying on the continuing domicile presumption. In other words, once a Louisiana domicile has been established through driver's license records—even if those records pre-date August 2019—there is a presumption that the class members would continue to be domiciled in Louisiana absent evidence rebutting that presumption.[63] However, GoAuto further argues that the "continuing domicile" presumption does not apply here because more than one year elapsed between the time that driver's license information for approximately 80% of the class was provided to GoAuto and the date this case was filed. Citing to *Preston I*, GoAuto states that the "Fifth Circuit has refused to apply a 'continuing domicile presumption' for a period longer than a year."[64] GoAuto's supplemental brief includes a parenthetical describing *Preston I's* holding as "'plaintiffs here filed their petition approximately one year after [Hurricane Katrina] on August 4, 2006,' so that Plaintiff's 'do not receive the benefit of the continuing domicile presumption.'"[65] GoAuto's argument on this presumption and its reliance on *Preston I* in this case is flawed in at least three respects.

---

[61] ECF No. 41 at 5-6; ECF No. 41-5 at ¶ 5.
[62] *Id.*
[63] *Preston I*, 485 F.3d at 801.
[64] ECF No. 41 at 5.
[65] *Id.* (citing *Preston I*, 485 F.3d at 801).

12

First, GoAuto misstates *Preston I's* holding with respect to the continuing domicile presumption by suggesting that the *Preston I* court rejected the presumption based solely on the one-year lapse of time in that case. In fact, the *Preston I* court rejected the continuing domicile presumption not because of the one-year lapse of time, but because the plaintiffs in that case had not come forward with any evidence of domiciliary intent—only billing addresses. According to the court, the plaintiff's "failure to adequately establish the domicile of the plaintiffs at the time of Hurricane Katrina or at the time of the filing of the lawsuit extinguish any argument that the court may presume continuing domicile."[66] Simply put, the presumption was never triggered in *Preston I* because the plaintiffs submitted no evidence that the class members were domiciled in Louisiana. In contrast, Plaintiff has come forward not only with billing addresses, but also driver's license data that is sufficient to show domicile in the present case.[67]

Second, in relying on *Preston I* and *Preston II*, GoAuto ignores the impact of Hurricane Katrina on that court's analysis of citizenship. In *Preston II*, the court expressly rejected the argument that the continuing domicile presumption was unavailable in that case solely because of the aftermath of Hurricane Katrina.[68] However, in distinguishing the result in *Preston II* from the result in *Preston I*, the court acknowledged the impact of the dislocation caused by the hurricane and how that impact complicated the citizenship inquiry in those cases.[69] As another court has observed, "the massive relocation that took place post-Katrina...deprived the [*Preston I*] court of the ability to presume that the class members had maintained their Louisiana domicile."[70] GoAuto

---

[66] 485 F.3d at 801.
[67] *Evans*, 426 F. Supp. 3d at 405 ("Texas driver's licenses are also probative of an intent to remain in Texas, as a person is unlikely to obtain a driver's license in a state he does not intent to remain in for some time.")
[68] *Preston II*, 485 F.3d at 818.
[69] *Id.* at 819; *Preston I*, 485 F.3d at 801.
[70] *Payton v. Entergy Corp.*, No. 12-cv-2452, 2013 W.L. 5722712 at *9 (E.D. La. Oct. 21, 2013).

13

points to no evidence of any event like Hurricane Katrina that would undermine the applicability of the continuing domicile presumption in the present case.

Finally, GoAuto's argument ignores other evidence supporting a finding of Louisiana citizenship for more than two-thirds of the proposed class. Specifically, Plaintiff's claims are limited to insureds who made claims under Louisiana automobile insurance policies. It is reasonable to infer that, like possession of a Louisiana driver's license, an insured who obtains a Louisiana automobile policy likely intends to remain in Louisiana for a period of time.[71] Plaintiff also relies on expert testimony on interstate migration rates to show that the members of the proposed class domiciled in Louisiana were likely to remain in Louisiana as of the August 2019 filing date of this case.[72] GoAuto has not rebutted the continuing domicile presumption. In sum, as in *Preston II*, Plaintiff has submitted sufficient evidence to show, by a preponderance of the evidence, that more than two-thirds of the potential class members were domiciled in Louisiana as of the filing date of this case based on the continuing domicile presumption.

### 4. Expert Opinion Based on Census Data.

Plaintiff also relies on the expert testimony of Dr. Troy Blanchard, a Professor of Sociology and Dean of the College of Humanities and Social Science at Louisiana State University.[73] Dr. Blanchard conducted "an analysis of out-migration patterns for the state of Louisiana using the 2019 American Community Survey Five Year file that includes survey data from the 2015, 2016, 2017, 2018, and 2019 American Community Survey of U.S. household [sic] collected by the U.S. Census Bureau."[74] In his deposition, Dr. Blanchard explained that he used five-year migration data because, based on the discovery provided by GoAuto, over 90 percent of class members had

---

[71] *Rosa*, No. 21-CV-3153, 2021 WL 3774312, at *6.
[72] ECF No. 38-3
[73] ECF No. 38-3 at 1.
[74] *Id.*

"effective dates" on their insurance policies from 2016 through 2019.[75] Using this data and analysis, Dr. Blanchard opines that approximately 2.41 percent of class members would leave the state every year and that approximately 9.2 percent of the class would have left the state over a four-year period.[76] Applying this data and analysis to the 6,385 class members who had Louisiana billing addresses and Louisiana driver's licenses, Dr. Blanchard concluded that 5,797 of these class members remained in Louisiana as of 2019, the year this case was originally filed.[77] This represents approximately 85.8 percent of the 6,753 GoAuto insureds who fall within Plaintiff's class definition.[78]

GoAuto argues that Dr. Blanchard's testimony does not support Plaintiff's position that more than two-thirds of the proposed class were Louisiana citizens at the time this case was filed. GoAuto first argues Dr. Blanchard's analysis and the data that he used in conducting his analysis do not reflect any individualized evidence of class members' intent to remain in Louisiana. In this regard, GoAuto is correct. Dr. Blanchard concedes that he did not base his analysis on the subjective intent of individual class members. For example, he did not interview potential class members and did not conduct any surveys of the class members identified in GoAuto's records.[79] However, GoAuto's argument fails for two reasons. First, in arguing for individualized proof of domiciliary intent, GoAuto ignores the Fifth Circuit's distinction between the citizenship inquiry involved in applying CAFA's exceptions and the citizenship inquiry involved in a traditional

---

[75] ECF No. 38-4 at 4, lines 1-6.
[76] ECF No. 38-3 at 2.
[77] ECF No. 38-3 at 3.
[78] ECF No. 38-4 at 3, lines 2-11.
[79] ECF No. 38-4 at 10-11. GoAuto criticizes the lack of a survey directed toward individual class members, and points to cases where plaintiffs have conducted such surveys. *See, e.g., Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 548 F. Supp. 2d 268 (E.D. La. 2008). However, the cases cited by GoAuto do not mandate class member surveys. Moreover, the *Preston II* court did not require a formal class member survey, but instead relied on a handful of affidavits largely from named plaintiffs. Here, evidence of domiciliary intent is supplied by driver's license data, so there is no requirement for a formal survey of over 6,000 potential class members (or even a survey of a smaller, but still significant sample).

diversity case.[80] The Fifth Circuit in *Preston II* expressly rejected an approach that requires an individualized inquiry into the domiciliary intent of each class member. Second, GoAuto's argument does not consider Dr. Blanchard's testimony in the context of the other evidence of citizenship in the record. Blanchard's testimony, standing alone, is not sufficient to show that more than two-thirds of the members of the proposed class were domiciled in Louisiana as of the filing date of this case. However, the record also includes billing addresses, driver's license data, and evidence of Louisiana automobile insurance that—as explained previously—are sufficient to establish domicile. Blanchard performed this analysis based on aggregate census data and his assessment of average migration rates—in other words the average rate of Louisiana citizens who leave the state over a period of time. In this context, Dr. Blanchard's testimony buttresses the presumption that class members who were Louisiana citizens when they obtained their policies remained Louisiana citizens at the time this case was filed.[81]

GoAuto challenges Dr. Blanchard's analysis on the grounds that he allegedly "does not consider whether GoAuto's insureds differ in any relevant way...."[82] In other words, GoAuto suggests that Blanchard did not consider the demographics of GoAuto customers versus the general population, or whether purchasers of "low-cost auto insurance" tend to be "a more transient population."[83] GoAuto, however, does not point to any evidence or expert opinion supporting its suggestion that the members of Plaintiff's proposed class are "transitory." GoAuto's argument

---

[80] *Preston II*, 485 F.3d at 816.
[81] *Id*. GoAuto also points out that Dr. Blanchard (and Plaintiff) "misrepresented" his analysis as showing out-migration rates for five (5) years when the table summarizing his analysis shows that he only analyzed out-migration rates for four (4) years. ECF No. 41 at 7, n. 13. The table at issue shows the total number of class members remaining in Louisiana in years 1 through 5. ECF No. 38-3 at 4. While Dr. Blanchard appears to have examined five (5) years of data, GoAuto is correct that he only applied the 2.42% yearly out-migration rate to calculate changes for four years: year 1 to year 2, year 2 to year 3, year 3 to year 4, and year 4 to year 5. This aspect of Dr. Blanchard's analysis does not undermine or change the Court's conclusion that his expert opinion supports Plaintiff's position that at least two-thirds of the class were Louisiana citizens when the case was filed.
[82] ECF. No. 41 at 7.
[83] *Id*.

16

here appears to dovetail into GoAuto's overall critique that Dr. Blanchard relied solely on aggregate data and did not address the domiciliary intent of individual members of the class. As with GoAuto's overall critique, its argument here does not view Blanchard's analysis in the context of other evidence of citizenship in the record and it ignores *Preston II*'s practical approach to determining citizenship for purposes of CAFA's exceptions.[84]

Finally, GoAuto further challenges Dr. Blanchard's expert opinion to the extent that it is based on data from the American Community Survey. GoAuto contends that this survey does not accurately measure domiciliary intent and "has a very high rate of no response at the initial addresses selected, raising an issue of whether it is a proper source for data on relocation of the population."[85] Other courts, however, have given weight to citizenship data contained in the American Community Survey in determining citizenship under CAFA.[86] Accordingly, the Court concludes that the American Community Survey—in conjunction with the other evidence in the record—is sufficiently reliable to perform the "common-sense analysis" required in determining the citizenship of the members of Plaintiff's proposed class.[87]

### 5. Conclusion.

In sum, the Court finds that the evidence in the record establishes, by a preponderance of the evidence, that more than two-thirds of the members of the Plaintiff's proposed class were

---

[84] The Court notes that, while Blanchard did not perform any analysis as to whether GoAuto's customers were a "transient" population, he did break his analysis down by age group as far as the proposed class. Accordingly, Blanchard did consider demographic data as far as different age groups.
[85] *ECF No. 41 at 7.*
[86] *See, e.g., Evans*, 426 F. Supp. 3d at 405-406; *see also Panda Rest. Grp., Inc.*, No. 12-cv-00996, 2012 WL 3930346, at *2 (C.D. Cal. Sept. 7, 2012) (relying on American Community Survey data for purposes of citizenship and an application of the CAFA exception); *Cortez v. McClatchy Newspapers, Inc.*, No. 15-cv-01891, 2016 WL 3181200, at *6 (E.D. Cal. June 7, 2016) (same). In both *Preston I* and *Preston II*, the court ruled that census data and data compiled in the 2006 Louisiana Health and Population Survey Report were not probative as far as citizenship. Again, the court was addressing citizenship in the context of a massive displacement of New Orleans-area residents resulting from Hurricane Katrina. The plaintiffs in those cases do not appear to have relied on the American Community Survey.
[87] *Preston II*, 485 F.3d. at 819 (applying "common-sense as part of the calculus in determining the citizenship of the class members.").

citizens of Louisiana at the time the case was filed in August 2019. The Court's finding is based on evidence showing that 6,385 of the 6,753 insureds identified as class members by GoAuto's records—approximately 94.5 percent—were Louisiana citizens at the time that they obtained their policies. Plaintiff is entitled to rely on the continuing domicile presumption because GoAuto has not come forward with evidence that rebuts that presumption. The unique and unprecedented circumstances at issue in *Preston I* and *Preston II*—the dislocation caused by Hurricane Katrina—are not present in this case.[88] Moreover, unlike *Preston I*, Plaintiff has come forward with evidence of domiciliary intent. Plaintiff has, therefore, met her burden of proving each of the six requirements for the Local Controversy exception to CAFA jurisdiction by a preponderance of the evidence. Accordingly, remand is mandatory under this provision of CAFA.

### C. The Home State Exception.

Plaintiff also seeks remand under the Home State exception. The Home State exception requires a federal court to decline CAFA jurisdiction when two-thirds or more of the members of the plaintiff class in the aggregate and the primary defendant are citizens of the state in which the action was originally filed.[89] Here, for the same reasons that the Local Controversy exception applies, the Home State Exception applies. Specifically, Plaintiff has established, by a preponderance of the evidence, that at least two-thirds of the proposed class were citizens of Louisiana at the time the case was filed. GoAuto is also a citizen of the state of Louisiana. Accordingly, the Home State exception provides an independent basis to remand this action to state court.

---

[88] *See Bennett v. Board of Comers for East Jefferson Levee Dist.*, 2007 WL 2571942 (E.D. La. 2007); *Reed v. Suntrup Hyundai, Inc.*, 2009 WL 2568054 (E.D. Mo. 2009).
[89] 28 U.S.C. § 1332 (d)(4)(B).

## III.
### CONCLUSION

For the foregoing reasons, Plaintiff has established by a preponderance of the evidence that both the Local Controversy and the Home State exceptions to CAFA jurisdiction require remand of the present matter to the state court. Accordingly, the Court **ADOPTS** the recommendation of the R&R that the Motion to Remand be granted, but for the reasons stated herein. Plaintiff's Motion to Remand and Associated Request, in the Alternative, for Jurisdictional Discovery [ECF No. 11] is **GRANTED** and the matter is **REMANDED** to state court. The Court will **STAY THE REMAND ORDER** for a period of thirty (30) days.

THUS DONE in Chambers on this 25TH day of April, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE